81 497
90 569

LEWIS F. STRATTON, and others *vs.* MICAJAH CURRIER, and others.

Penobscot.    Opinion May 6, 1889.

*Waters.  Mill-owners.  Mill-dams.  Log-sluice.  Reservoir-dams.  Storage-water.*

A mill-owner who constructs and maintains a dam on his own land, on a stream floatable for running logs, to raise a sufficient head of water to operate his mill, with a sufficient sluice-way to conveniently pass over it all logs which the stream will float in its natural condition cannot, afterwards, be required to enlarge the capacity of the sluice, by a log owner above his dam, who, under a charter from the legislature, constructs dams to store and hold the water of the stream for use when needed, and removes natural obstructions in it, and thereby increases its capacity for floating logs to such an extent that the sluice is insufficient.

*Pearson* v. *Rolfe,* 76 Maine, 380, and *Foster* v. *Searsport Spool & Block Co.,* 79 Maine, 508, affirmed.

ON EXCEPTIONS, by plaintiffs.

This was an action on the case for obstructing the Piscataquis river, in 1884, at Abbot.

The plaintiffs and others obtained a charter from the state, in 1883, under which they had constructed two reservoir-dams and otherwise improved the river above Abbot.   In the spring of 1884, the plaintiffs, making use of the water thus stored up by these reservoir-dams, drove their logs, the drive being four million feet, down the river through a sluice in the defendants' dam, at Abbot, but, as they say, were put to unreasonable expense, because the sluice was not a reasonable and proper one.

The principal question, at issue in the trial of the case, was whether the sluice was a reasonable one, for the driving through of the plaintiffs' logs.

Plea, general issue, and brief statement alleging, in substance, that the dam was a lawful and proper structure erected and maintained, for upwards of twenty years, for the purpose of running the mills connected with it in manufacturing lumber; and that there was a sufficient sluice-way in the dam so that the

plaintiffs could drive their logs with reasonable convenience and facility.

The defendants further claimed the rights of mill-owners on said dam for the purpose of manufacturing lumber; and that they took no more water, nor in a different manner than was necessary or lawful, as such mill-owners; also the right to erect and maintain and use the dam by possession and ownership of the land and privilege.

The defendants also contended that any detention or injury which arose in the driving the logs was caused by the plaintiffs' own act or neglect; but in this branch of the case, there were no exceptions to the rulings or instructions of the court.

After the evidence was closed, the jury viewed the premises, and rendered a verdict for the defendants.

The plaintiffs excepted to the following portions of the charge to the jury by the presiding justice:

"Rivers are public highways, and if they be navigable rivers,— that is, within the ebb and flow of the tide,—then the riparian owner owns only to low water mark, and if the holding is upon a bay or place where the tide ebbs more than one hundred rods, then to low water mark not exceeding one hundred rods. But that is not the law in regard to streams non-navigable. There the riparian owner owns to the thread of the stream; and if he owns upon both sides he owns the land under the stream, he owns the rocks in the bed of the stream; he owns every thing that is attached to the realty; and no man can remove a rock from a floatable stream except by permission of the riparian owner, or by permission from public grant, by reason of original authority, and then upon provision being made for any damages or compensation awarded to the riparian owner for the taking of his property.

The following portions of the charge in brackets were not excepted to. (So that, as in the present case, a floatable river like the Piscataquis, which is admitted by the defendants in this case to be a floatable stream in its natural state, the riparian owners are possessed of the bed of the stream. They own the soil under it and the rocks in it, and they have a right to build mills upon it and to extend their dams across it. On the other hand, the pub-

lic has a right to navigate it, to float lumber to market. The one has the right to use the water for propelling machinery; the other, the right to the use of the water in bearing and floating the products of the forest to market. The rights, you see, are common rights, rights which each party is vested with; and where those rights conflict, then certain reasonable rules of law obtain which determine the prior or superior right.

Now the mill-owner across a floatable stream like the Piscataquis, when he attempts to put his mill and dam across the stream, cannot abridge, unreasonably, the public right of navigating it with lumber, but he may impede the navigation of the stream if he does not do it unreasonably; and whether or not his dam and the provisions he has made for the passage of lumber that floats down the stream, is or is not a nuisance to the public, depends upon whether he has provided a reasonable chance for the passage; or, in a case like the present, whether he has provided a reasonable log-sluice,—a sluice that is convenient and one which facilitates the running of the logs.)   And in determining whether the mill-owner has provided a reasonable opportunity for the operator to float his logs by, is a question of fact,—a question for the jury to decide; and in determining that, they are to take into consideration, only, the stream in its natural state. If the stream be a rocky, hard stream to drive, suitable only for driving small or short lumber, and the mill-owner impedes the stream by placing a dam across it, he is bound, only, to provide a passage to float lumber in its natural state without the aid of any artificial device.   And whether the defendant in this case has provided a reasonable and proper sluice for floating logs through, depends upon whether or not he has done so while the stream remained in its natural condition; because, otherwise, if the riparian owners above should clear a channel and by legislative authority or otherwise, should store water and make the stream navigable, if you please, for a craft that could be floated over dams, he might be required to furnish locks to get them up and down, and that the law does not require him to do; it only requires him to give a reasonable chance for the passage of lumber that may be floated upon the stream in its natural state.   Has the defendant in this

case so done? If in the spring of 1884, he had in his dam at Abbot, a reasonable sluice for the passage of logs or lumber, taking into consideration the stream in its natural state and its capabilities in its natural state without the aid of artificial device, without the aid of volumes of water to be stored up and to be used at the pleasure of the owner of it, that was all the law required him to do.     *     *     *

If they had to have that sluice-way capable of aiding and accommodating the floating of lumber beyond what the stream would naturally float and drive, they must obtain authority from the public and give compensation for any improvement made; or they must buy it if they use it as their own property.     *     *     *

Taking into consideration the situation of the mill, the location, and all the surrounding circumstances; taking into consideration the burden of the mill-owner and taking into consideration the necessities of the log driver, did the defendants furnish a reasonably convenient and suitable passage for logs on that river in its natural state, at a drivable pitch? If they did that, then they were bound to do no more and they are not liable in this case.     *     *     *

If the plaintiffs stored that water in the reservoir above, they owned it, and they had a right to let it down that stream and to run their logs with it, and to acquire the facilities of the mill-owners, that is, a sluice such as they would be required to furnish for the running of the river in its natural state, in a drivable pitch."

At the request of the plaintiffs, the presiding justice also gave the jury the further instruction, "that if the plaintiffs' logs could have been driven, with the river in its natural state at any season of the year, they were entitled to have a reasonable passage, when by reason of the water stored, they could float their logs to the defendants' dam."

*D. F. Davis and C. A. Bailey,* for plaintiffs.

Under the ruling of the court, the mill-owner is not obliged to enlarge or improve his sluice, so as to accommodate the capacity of the stream in its improved condition, but is held only to main-

tain a reasonable sluice, taking into consideration the capacity of the stream in its natural state at the dam, at a drivable pitch.

This presents the question, if the log or land owner, above a mill-dam, improves and enlarges the capacity of the stream for driving logs, whether the mill-owner is obliged to enlarge and improve his log-sluice so as to accommodate said logs.

Plaintiffs do not claim the water raised by defendants, as in *Pearson* v. *Rolfe*, 76 Maine, 380, relied on by defendants, but they claim that defendants should furnish a suitable sluice, through which they may run their own logs, by means of water raised by their own dams.

Doctrine of *Pearson* v. *Rolfe*, does not apply. The river at Abbot dam was naturally floatable when plaintiffs' logs were driven over it. Plaintiffs did not claim exclusive use of the water at that time; only claimed a reasonable sluice, large enough and so constructed that they might drive their logs with the water, which they had stored themselves.

The gist of that decision is, that Pearson had the right to run his mill with the water raised by his mill-dam, while here plaintiffs claim the right to use water stored by themselves.

If the doctrine of the charge is to stand, it must have a marked effect upon the lumber industry of the state. New methods of improving water courses, render streams capable of floating large quantities of logs, which in their natural state can float but few logs. Lumber will be driven from extreme head waters. Railroads being pushed through the interior of the state, mills will spring up on all large water courses.

Reservoir-dams, etc., will increase the driving season of small floatable streams for weeks and even months. Having thus improved the navigation of the stream and increased its capacity twenty-fold, what is the land and log owner to do with his two million feet of logs, in place of the former one hundred thousand, when he finds the dam below insufficient, yet, according to the charge, all that the law requires?

The more reasonable rule is for the mill-owner to maintain his sluice capable of accommodating all logs, no matter how much the stream is improved. The burden on the mill-owner is trifling,

while the damage he may cause the log owner may be immense. Besides, the improvements made by the log owner will be beneficial to the mill-owner.

What rule is to be applied to the mill-owner who erects a mill on a stream after the log owner has doubled its capacity for floating logs above its natural condition? The rule laid down, in the charge, will produce uncertainty.

Counsel also cited *Treat* v. *Lord*, 42 Maine, 552, 554, 556.

*A. G. Lebroke and W. E. Parsons*, for defendants.

The plaintiffs were driving logs by the use, in part, of water stored in reservoir-dams, at Shirley Bog and Bald Mountain Stream, many miles above Abbot. The dams were built under a charter enacted in 1883, more than forty years after defendants' rights to their mill and privilege had been established.

The corporation has right to take tolls. The changes or improvements made by it, were not at defendants' mill and sluice, but many miles above Abbot. Without the use of the surplus water from the reservoir-dams, the logs could not have been floated over the rough bed of the stream above defendants' mills, or reached Abbot, at the time in question. River at Abbot, at time in question, not navigable or floatable; and use of water at such time and place belongs exclusively to riparian proprietors. *Pearson* v. *Rolfe*, 76 Maine, 380, 384. Rights and liabilities of parties are to be based, not upon an artificial condition, but the natural state of the stream. *Pearson* v. *Rolfe, supra, Foster* v. *Searsport Spool & Block Co.*, 79 Maine, 508. This view sustained by the authorities; and is the only sound, practical and constitutional rule which can be adopted. No legislative act can load defendants with burdens twice as onerous, as before its passage, without just compensation under the constitution.

There would be no certain rule, which mill-owners could adopt and feel secure, if they were compelled to be governed by the fitful and spasmodic acts of others making improvements and changes in the bed of streams, and sending forth vast volumes of water artificially stored, and increasing indefinitely logs hurled upon and piled up at a single point, in a single day.

If riparian proprietors or owners of mills and dams should be held to be bound by the wanton, or capricious, or uncertain acts of owners or managers of dams and reservoirs, over which such riparian proprietors or mill-owners had no control, and of which the mill-owner might not have knowledge or notice, such structure for raising water, being perhaps far remote in the inaccessible wilderness, the rule would be as uncertain as the movements of the *ignis fatuus*; and might be as destructive to the mill-owner as the visit of a cyclone, if he were to be held responsible for all consequences. With these vast reservoirs, plaintiffs could by the raising of a gate produce a freshet; and by closing it could produce a drouth at pleasure.

The charge is sustained by *Pearson* v. *Rolfe, supra;* Cooley's Torts, p. 583; *Lancey* v. *Clifford*, 54 Maine, 487; *Dwinel* v. *Veazie*, 50 Id. 479; Gould, Waters § 110, and all the authorities.

If the river was not navigable or floatable, at the time and place in its natural state, defendants not bound to make it so; yet plaintiffs have sued defendants because they say they were hindered in getting their logs over defendants' works, when they were obliged to use stored water to drive their logs down to defendants' mill. No action would lie under all these circumstances.

LIBBEY, J. In 1884, the defendants were the owners of a mill, and dam across the Piscataquis river, to raise and hold a sufficient head of water to operate their mill, on their own land at Abbot. They claim that they had owned and possessed their mill and dam, in the same condition that they were then in, for more than twenty years. The Piscataquis river at that point was not navigable as a tidal river, but was floatable for the running of logs at certain seasons of the year. The defendants claim that when their dam was constructed it was provided with a sluice proper and sufficient for passing all logs that the river in its natural state, and as it then was and had been down to 1884, could float. They say that prior to that time, by reason of the natural character of the river above their dam, the water fell so rapidly in the running season that comparatively but a small quantity of logs could be floated to and over their dam.

The plaintiffs do not seem to have controverted these facts, but claimed and introduced evidence to prove, that in 1883, they obtained a charter from the state to build reservoir-dams and otherwise improve the river above that place, and that under that charter they had constructed two reservoir-dams and otherwise improved the condition of the river for floating logs above Abbot.

That in the spring of 1884, they had in the river above Abbot four millions of logs which they drove down the river that season; and that to enable them to drive that quantity they had their reservoir dams full of water, which they used for that purpose. They claimed that the sluice at the defendants' dam was not of sufficient capacity to enable them to run that large quantity of logs over the dam without unreasonable and unnecessary delay; and that for that reason the dam was a nuisance to them and caused them great damage.

The great question in contention between the parties was, whether the defendants were obliged to maintain a sluice over their dam reasonable and proper for the use of the plaintiffs for floating the large quantity of logs which they were able to float, by the water which they had stored up by their reservoir-dams, and which they would not have been able to float by the natural and usual condition of the river before their dams were constructed; or whether they complied with the duty imposed upon them by maintaining a sluice reasonable and proper for passing all the logs, which could be run in the river above their mill, by the natural condition of the water.

Upon this point, the court charged the jury in substance, that the defendants had a right to construct and maintain their dam upon their own land for the purpose of raising a sufficient head of water to operate their mill. That the stream being of sufficient capacity to float lumber, the public had a right to its use for that purpose; the plaintiffs had a right to its use for that purpose; and that in constructing and maintaining their dam, the defendants were bound to provide reasonable and proper means for floating over their dam the lumber which the stream was capable of floating, in its natural condition. That they were not bound to provide in 1884, for the plaintiffs a sluice of additional capacity

to enable them to run the large quantity of logs, which they were able to float that year, by the use of the large quantity of water which under their charter, by artificial means, they had held back and stored for that purpose.

After the judge had given the jury his instructions upon this point, at the request of the counsel for the plaintiffs he gave them the further instruction: "That if the plaintiffs' logs could have been driven with the river, in its natural state at any season of the year, they were entitled to a reasonable passage when by reason of the water stored they could float their logs to the defendants' dam."

We think the instructions correct. It is not necessary to determine what the duties of the defendants would have been if the capacity of the river for floating logs had been increased by removing artificial obstructions, such as fallen trees, accumulations of logs, roots and brush in the river which impaired its capacity for floating lumber; for no such question appears to have been involved or raised at the trial.

The plaintiffs' contention is, that if the defendants' dam, as it was constructed and has been maintained prior to 1884, furnished reasonable and proper facilities for the exercise of the public right of floating lumber in the natural condition of the river, the action of the plaintiffs under their charter of increasing the capacity of the river by removing natural obstructions and by artificial means had correspondingly increased the duties of the defendants; so that, if prior to 1884, the dam was not a nuisance, and the defendants could not have been made responsible, the plaintiffs, by their own artificial devices, converted it into a nuisance to the public right and changed the liability of the defendants. We think this proposition is unsound.

The plaintiffs, by their charter, could not require the defendants to do anything in removing natural obstructions in the bed of the river. They could not enter upon the defendants' land to remove any obstructions to the damage of the defendants without rendering just compensation, if their charter in the exercise of the right of eminent domain by the state had conferred upon them the right to do so. If they could not take the defendants'

property for the purpose of accomplishing their objects, under their charter without just compensation, how can they by their acts under their charter increase the obligations of the defendants, and require them to construct a larger sluice at an expense of one hundred dollars or two hundred dollars, and thus substantially take their property without compensation?

The relative rights of mill-owners and of log owners, on floatable streams in this state, have recently been so fully discussed and determined by this court in *Pearson* v. *Rolfe*, 76 Maine, 380, and in *Foster* v. *Searsport Spool & Block Co.*, 79 Maine, 508, that we deem it unnecessary to enter upon a more extended discussion of the law in this case. We think the instructions of the court are in entire accord with the law as determined in those cases.

*Exceptions overruled.*

PETERS, C. J., WALTON, DANFORTH, EMERY and HASKELL, JJ., concurred.